IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| SYLVIA HARRISON and JOE PARKER, | ) ) ) | |
| Plaintiffs, | ) ) | NO. 1:20-cv-00004 |
| v. | ) ) | JUDGE CAMPBELL |
| VALLEY PACKAGING CORPORATION, | ) ) ) ) | MAGISTRATE JUDGE HOLMES |
| Defendant. | ) | |

## MEMORANDUM

Pending before the Court is Defendant's Motion for Summary Judgment. (Doc. No. 43). Plaintiffs filed a Response (Doc. No. 63), and Defendants filed a Reply (Doc. No. 68). For the reasons stated herein, the Motion is **DENIED**.

### I. FACTUAL BACKGROUND[1]

This case arises from Sylvia Harrison ("Harrison") and Joe Parker's ("Parker") claims of employment discrimination following their termination from Defendant Valley Packaging Corporation's ("VPC") corrugated paperboard manufacturing facility in Pulaski, Tennessee. Plaintiffs Harrison and Parker had each worked for VPC for more than two decades before the events giving rise to this case occurred. At the time of these events, Harrison served as the Customer Service Manager. (Doc. No. 64 ¶ 18). Parker served as the Production Manager and was responsible for ensuring "Production Team efficiency" and that the production team's goals were

---

[1] The facts presented in this section are derived from the parties' more than 60 pages of "undisputed material facts," most of which are disputed in some form. Unless otherwise stated, the Court cites to the facts as reflected in Doc. No. 64 and supported by the record before the Court.

met. (*Id*. ¶¶ 15-16). Both directly reported to Ron Galyon ("Galyon"), VPC's President and General Manager. (*Id*. ¶ 22).

In February 2018, Parker reported to VPC that he had observed Galyon driving around the production floor on his golf cart and staring at a young female employee's rear end as she worked. (*Id*. ¶ 147; Taylor Dep., Doc. No. 61, 51:20-23; Moore Dep., Doc. No. 60, 61:2-7). Harrison did not witness the events described by Parker, but also reported the conduct to VPC after hearing about the incident from a coworker. (*Id*. ¶¶ 155-156). The parties dispute whether Galyon was made aware of the accusations following the reports of either Parker or Harrison. There is no dispute, however, that both Parker and Harrison reported the event and expressed concerns about Galyon's conduct.

On October 29, 2018, VPC terminated Harrison and Parker. (*Id*. ¶¶ 135-136). VPC's cited Parker's failures with regard to his production goals and his failure to "support[] leadership decisions" and Harrison's failure to be an effective leader and creation of a toxic work environment for her employees as grounds for their termination. (*Id*. ¶ 134). The parties dispute many of the events leading up to the termination, particularly those regarding counseling of and discipline of Harrison and Parker due to job-related deficiencies, which Defendant contends was the reason for their termination.[2]

Plaintiffs filed suit against Defendant alleging retaliation in violation of Title VII for their reports of Galyon's conduct. Harrison additionally brings a claim of gender discrimination in violation of Title VII. Defendant moves for summary judgment on all claims.

---

[2] The Court recognizes that there are some statements that are not disputed but which have not been included. Those undisputed facts which have been omitted are so entrenched in disputed facts as to make them incomprehensible or apparently irrelevant absent the context conveyed by the disputed facts.

2

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers* 344 F.3d at 595.

## III. ANALYSIS

**A.     Retaliation**

"Title VII prohibits discriminating against an employee because that employee has engaged in conduct protected by Title VII." *Laster v. City of Kalamazoo*, 746 F.3d 714, 729 (6th Cir. 2014).

3

To establish a *prima facie* case of retaliation under the Title VII, "[a] plaintiff must demonstrate that: '(1) he engaged in activity protected by Title VII; (2) his exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was "materially adverse" to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action.'" *Id.* (quoting *Jones v. Johanns*, 264 F. App'x 463, 466 (6th Cir. 2007). "The burden of establishing a *prima facie* case in a retaliation action is not onerous, but one easily met." *Funk v. City of Lansing, Michigan*, 821 F. App'x 574, 582 (6th Cir. 2020) (quoting *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)). Once the plaintiff has established a *prima facie* case of retaliation, the burden of production shifts to the defendant to offer a non-discriminatory reason for the adverse employment action. *See Hubbell v. FedEx SmartPost*, 933 F.3d 558 (6th Cir. 2019). If the defendant meets its burden, the plaintiff then has the burden to demonstrate that the proffered reason was mere pretext. *Id*.

Defendant argues that Plaintiffs cannot establish three of the four prongs to establish a *prima facie* case of retaliation under Title VII: (1) that they engaged in protected activity; (2) that the decision maker knew; and (3) that there was a causal connection between the protected activity and the adverse action.

1. Protected Activity

"To come within the protection of Title VII, [Plaintiffs] must establish that [they] challenged an employment practice that [they] reasonably believed was unlawful." *Yazdian v. ConMed Endoscopic Technologies, Inc.*, 793 F.3d 634, 645 (6th Cir. 2015). Protected opposition activity has been interpreted broadly and includes reporting allegedly unlawful practices. *Jackson v. Genesee Cty. Road Comm'n*, 999 F.3d 333, 344 (6th Cir. 2021)*; see also Simpson v. Vanderbilt*

4

*Univ.*, 359 F. App'x 562, 571 (6th Cir. 2009) (finding that the plaintiff's informal complaints about a supervisor's behavior were sufficient to establish that plaintiff engaged in protected activity).

Defendant argues that Parker cannot establish that he engaged in protected activity because staring is not an unlawful act. (Doc No. 44 at 19 (citing *Curtis v. Vanderbilt Univ. Med. Ctr.*, No. 3:11-cv-258, 2012 WL 4481422 at *8 (M.D. Tenn. Sept. 26, 2012))). Notwithstanding that the case cited by Defendant does not stand for the proposition that reporting a supervisor for leering at or ogling an employee cannot be protected activity for purposes of a retaliation claim, the reported act need not be actually unlawful to place Plaintiffs under the protection of Title VII. Plaintiffs need only "reasonably believe[]" that the conduct is unlawful. *Yazdian*, 793 F.3d at 645. Plaintiffs have presented evidence as to their objective and subjective belief that the act was unlawful, including VPC's employee handbook, which lists "leering" as an example of sexual harassment. (*See* Parker Dep., Doc. No. 48, Ex. 17, PageID# 754, 122: 1-4; Harrison Dep., Doc. No. 58, 107-112).

Defendant additionally argues that Harrison cannot establish that she engaged in protected activity because she did not witness the conduct herself. Again, the Court returns to standard articulated above and notes that Plaintiff has submitted evidence that she reported conduct that she believed to be unlawful.

In sum, the Court finds that there is evidence in the record that Plaintiffs engaged in protected activity when they reported Galyon's conduct to VPC.

2. Decision Maker's Knowledge

Retaliation requires proof that the individuals charged with taking the adverse employment action knew of the plaintiff's protected activity. *See Laster*, 746 F.3d at 730. In its brief, Defendant argues that the decision-maker, Galyon, was not aware of Plaintiffs engaging in protected activity

5

until after Plaintiffs were terminated. Defendants point to evidence of Galyon's efforts to coach both Parker and Harrison and argue that such efforts would be inconsistent with a decision to terminate Plaintiffs with retaliatory animus. Plaintiffs respond that there are disputes regarding whether Galyon alone made the decision to terminate Plaintiffs and whether Galyon was aware of Plaintiffs' reports when he made that decision. (Doc. No. 64 ¶¶ 135-138).

The record reflects competing evidence by the parties regarding who made the decision to terminate plaintiffs. (*See* Parker Dep., Doc No. 48, 186-87; Harrison Dep., Doc. No. 58, 127; Hearon Dep., Doc. No. 59, 133; Moore Dep., Doc. No. 60, 111-112; Galyon Dep., Doc. No. 50, 176). The record also reflects dispute as to whether the decision-maker was aware of the protected conduct. (*See* Parker Dep., Doc No. 48, 164-68; Taylor Dep., Doc. No. 61, 63-67; Galyon Dep., Doc. No. 50, 230). Viewing the competing evidence, the Court finds that there are genuine issues of material fact to be resolved by a jury.

3. Causal Connection

Defendant also challenges Plaintiffs' ability to show a causal connection. "Title VII retaliation claims must be proved according to traditional principles of but-for causation." *Univ. of Texas Sw. Med. Ctr. V. Nassar*, 570 U.S. 338, 360 (2013). Accordingly, to succeed on a retaliation claim, a plaintiff must show that "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id*.

Defendant contends that Plaintiffs cannot establish a causal connection because there is a seven-month gap between Plaintiffs reporting the conduct and their termination. Plaintiffs point to evidence mitigating this delay, including medical leave taken by Galyon and other employee vacations. (Galyon Dep. Doc. No. 50, 101-03, 219). Galyon was out of the office from approximately the end of May to mid-August for vacation followed by medical leave. (*Id.*). Galyon

6

Case 1:20-cv-00004   Document 105   Filed 04/06/22   Page 6 of 9 PageID #: 2637

also testified in his deposition that Plaintiffs' termination was delayed by various employee vacations. (*Id.*).

Drawing all reasonable inference in the Plaintiffs' favor, the Court finds that they have presented evidence of a causal connection between their protected activity and the adverse employment action. *See Seeger v. Cincinnati Bell Tel. Co.*, LLC, 681 F.3d 274, 284 (6th Cir. 2012) (collecting cases regarding time delays); *see also Funk*, 821 F. App'x at 584 (finding that a time lapse of several months did not preclude a causal connection when there were intervening events).

4. Pretext

Defendant claims that it terminated Parker terminated for failing to meet production goals and support the decisions of the executives and that it terminated Harrison for failing to correct identified communication problems and for creating a toxic work environment. Because VPC has presented legitimate, nondiscriminatory reasons for terminating Plaintiffs, the burden shifts back to Parker and Harrison to identify evidence from which a reasonable jury could conclude that the proffered reason is pretext. *See Hubbell*, 933 F.3d at 568. "Demonstrating pretext often consists of 'raising the question of why [the plaintiff] was singled out' for an adverse employment action." *Strickland v City of Detroit*, 995 F.3d 495, 512 (6th Cir. 2021) (quoting *George v. Youngstown State Univ.*, 966 F.3d 446, 462 (6th Cir. 2020)).

To show pretext, Plaintiffs point to evidence of other managing employees who were counseled for purported performance failures and communication issues, including one who allegedly engaged in more severe conduct than that attributed to Harrison, but who were neither disciplined nor terminated. (*See* Hearon Dep., Doc. No. 59, 119, 122-26; Moore Dep., Doc. No. 60, 95-96, 164-68, 174-77; Galyon Dep., Doc. No. 50, 180-85). Viewing the evidence and drawing

7

all reasonable inferences in the light most favorable to Plaintiffs, the Court finds that a reasonable jury could determine that Defendant's proffered reason was pretext for retaliation.

Accordingly, Defendant's motion for summary judgment on Plaintiffs' retaliation claims will be denied.

**B.     Gender Discrimination**

Harrison also brings a claim of gender discrimination in violation of Title VII. Title VII makes it unlawful for an employer to discriminate against any individual "with respect to his compensation, term, conditions, or privileges of employment" on the basis of the individual's gender. 42 U.S.C. §2000e-2(a)(1). "Intentional discrimination claims can be proven by direct or circumstantial evidence." *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 648-49 (6th Cir. 2012). "Direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Id*. In cases where direct evidence is presented, "once a plaintiff shows that the prohibited classification played a motivating part in the employment decision, the burden of both production and persuasion shifts to the employer to prove that it would have terminated the employee even if it had not been motivated by impermissible discrimination." *Id*. (quoting *Nguyen*, 229 F.3d at 563).

Defendant's only argument on this issue is that Harrison cannot prove gender discrimination because she was replaced by another woman. A showing of being replaced by a person outside the protected class is only necessary when there is no direct evidence of discrimination. *See id*. However, Plaintiff has submitted direct evidence of discrimination, specifically Galyon's statements to Parker that Galyon "didn't want a woman running the department" referencing Harrison and another female manager. (*See* Parker Dep. Doc. No. 48, 150:7-8; 151:8-12; 152:15-18). Accordingly, summary judgment will not be granted on this claim.

8

## IV. CONCLUSION

For the reasons stated herein, Defendant's motion for summary judgment on Parker's retaliation claim and on Harrison's retaliation and discrimination claims will be denied.

An appropriate order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE